Could we hear next from the parties in United States v. Delva? Thank you. Thank you. Good morning. May it please the court, my name is Alan Nelson and I represent the appellant Gessner-Delva. The district court clearly erred by declining to conduct an evidentiary hearing as requested by appellant to determine drug quantity upon his motion to reduce his term of imprisonment pursuant to 18 United States Code 3582C2. In United States v. Rios, this court observed it would often be necessary to have subsequent evidentiary hearings to determine specific drug weights after an amendment to the drug offense guidelines. But in this case, there was a specific factual finding relating to the quantity of cocaine. Is that correct? Actually, there was not. Actually, there was not. There was a determination made by the court, rather by the jury, in the trial of the case that the amount of drugs exceeded the 10-year mandatory minimum and there was no basis upon which there was any contest made at sentencing or at trial. That's the problem. That's the incentive issue. But the judge said at sentencing that he dealt in at least 600 kilograms of cocaine. The judge made that determination without there ever being any appropriate basis to contest that either at the trial level or sentencing. There may not have been an interest in your client in contesting it. But this was a finding the judge made. And the law presumes that those findings control. I mean, your client may have had a greater interest on the motion to challenge that than he did at the original sentencing. But I think you're hard-pressed to say there wasn't a finding. The finding by the court was that the testimony in the trial determined that there was over 600 kilograms of cocaine involved in the conspiracy. However, the trial evidence also demonstrated that while there was an extraordinarily large amount of evidence to demonstrate that Mr. Delver was involved in a 363-kilo transaction of which there was corroboration of, the only evidence that existed of his participating in those prior transactions was that of the uncorroborated testimony of cooperating witnesses, not a single one of which was cross-examined concerning the details of Delver's participation in that offense. Because the defense strategy at trial in the case— You're not getting to whether the finding was supported. Yes, Judge. That's precisely the point. The problem is there was a finding made. Now we get to your argument, which is the novel one, that we should allow drug weight to be relitigated on a 3582c2 motion if the defendant has an interest in challenging it on the amendment that he didn't have it sentencing. Isn't that the crux of your argument? That is absolutely correct, Judge. Why should we allow that? I mean, there's an interest in finality here that doesn't seem to be something we should upset just because there's a 3582c2 motion. Because Dillon, this Court in Rios, and 3582 as well as due process as being the underlying principle surrounding all of them are articulated rather clearly by former District Court Judge John Cleason in the citation I gave to the Court, which was the following. I think you're missing the point in Rios. Rios recognizes that there can be litigation on matters that warrant— I understand that very clearly. But it doesn't say you can relitigate matters that were determined. Exactly. And Judge Cleason stated, and I think that this is the most prescient argument to make, that sometimes there are fact findings made at the original sentencing and circumstances where the defendant had simply no incentive to challenge the fact involved. Drug quantities. It might even be the only example. When drug quantities are lowered, when the triggering amounts are lowered, it can create a situation where a defendant who had no incentive to litigate the amount of drugs in the first time around, now all of a sudden has one. In those circumstances— Explain to me again, Mr. Nelson, why it is that at trial, as opposed to sentencing, there was no incentive to cross-examine any of the cooperating witnesses? Trial counsel— In connection with— And there had been two trials here. The first trial was a deadlock jury. In the second trial, the defense strategy was simply that Mr. Delva had no participation whatsoever in the offense, and he ignored completely anything with respect to drug quantity. There was not a scintilla of cross-examination nor any issue raised in the summation  It's not a lack of incentive. It's a strategy. Yes. It was his strategy. And at sentencing, and I was then appointed for purposes of sentencing, at that time, 150 kilos was the threshold amount to be at level 38. That amount was clearly demonstrated just based upon the fully corroborated Staten Island seizure that was made in March of 2003. I did not address, because there was no reason or incentive to address whether or not he should be held accountable for these prior drug shipments that took place in 2002. What was particularly interesting, though, in the trial is that the trial evidence demonstrated, one, that Delva was a relative latecomer into the conspiracy. He was brought in because of a lost drug shipment and a kidnapping that took place and, I guess, his prior drug dealing activity that the suppliers were aware of. And the only evidence that demonstrated that he was involved in these prior shipments was the testimony of cooperating witnesses. There was absolutely no other evidence whatsoever. Let me demonstrate that. When you get to cross-examine them, when you didn't cross-examine them at trial and you didn't challenge it at sentencing, now you want a hearing to cross-examine those witnesses? To cross-examine those witnesses and or whatever proof the government might have as it relates to Delva's- I know you're interested in reopening that. I mean, it's appropriate to give you an opportunity to do it, but when you've given up that opportunity, I mean, I'm not sure the court would have allowed you to do it at sentencing where you didn't do it at the trial. I'm sure that the court would have, had 782 been enacted at that time, because it would have made a significant difference. But the strategy of the witnesses shouldn't be credited. They were on the stand, available for your examination, and you chose not to do it. Well, not really, because the strategy at trial was that he didn't participate in the offense. So why would you possibly, as a defense attorney at that time, intend to open the door to get further evidence that might corroborate things that they have to say? As an experienced trial attorney, that attorney took the approach. Well, you just admitted that one of the cooperating witnesses, Mr. Bateau, was corroborated when they found the 368 kilograms of cocaine. Absolutely. He also, in addition to the 368 kilos of cocaine that were found, testified about another shipment of 200 kilograms. He did. So why was he not a corroborated witness in that sense overall? Because 200 plus 368. Because the typical manner of which a preparation of a cooperating witness would be the history and character of how somebody came to participate in an offense. In order to lay out what somebody did earlier, to corroborate what he does now, an individual would testify as to the prior dealings and transactions with that person. But there was no evidence to demonstrate that he, that cooperating witness, in fact had prior dealings with Mr. Delver as it related to those other transactions, other than his own testimony with respect to that. Indeed, as it relates to the later seizure, it really wasn't a seizure because the drugs had been stolen, but there were recordings that had taken place which corroborated what the cooperating witnesses had to say. So there wasn't a basis to attack those cooperating witnesses as to the prior transactions at trial. I think that the bigger picture though. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Whitman Knapp. I'm an Assistant United States Attorney for the government here today. Here, the defendant simply did not meet the threshold under Dillon for a resentencing. The trial court, the sentencing court, found that he was responsible for the importation of more than 600 kilograms of cocaine into the United States. The penalty for importing more than 600 kilograms of cocaine into the United States was the same when he was sentenced in late 2009 as it is today, pursuant and subsequent to Amendment 782. There was ample basis in the record for the court to come to the conclusion and make the finding that he did. My question is not whether there was sufficient evidence. Counsel's argument is that he didn't really have the same incentive to challenge that at trial or at the initial sentencing that he had on the motion, and that the law should afford him the opportunity to challenge it. So why shouldn't we agree with that? Your Honor, I think as expressed in Rios, there is a value to finality in this sort of circumstance. And I would also take issue with the notion that there wasn't an incentive during trial or at the time of sentencing to really challenge this information. At base, what defense counsel is going to do is to try and discredit to the fullest extent possible all of the cooperating witnesses who testify. Here there were five. The evidence as previously characterized by this court in a previous appeal was overwhelming. There are specific amounts that certain of the defendants referred to that are cited in our papers. And the defendant had plenty of opportunity to try to fully discredit this witness or these witnesses, and he did not do it. Similarly at sentencing, I think even under these circumstances, there's plenty of opportunity to try to minimize in the course of sentencing the defendant's involvement in a situation like this. If, in fact, there had been some weakness in the evidence and the amounts, it certainly would have been in counsel's interest to argue that while the defendant had been found guilty, as the judge could have seen, the evidence as to the amount was not strong, and to try and argue fulsomely at that point that the amount simply was not more than 600 kilograms of cocaine and was significantly less. In sum, the court made a drug weight finding at sentencing based upon ample evidence. The penalty for importing more than 600 kilos at the time was the same as it is now. And as a result, the defendant is not entitled to a resentencing hearing here. If the court has no further questions, the government will rely upon its written submissions. Thank you. Thank you. Counsel, you did reserve two minutes. Yes, very briefly, Your Honor. First, in response to the government's last statement that there might have been a basis to raise drug quantity at sentencing, at sentencing there was clear indication that over double the drug quantity that would be necessary to trigger a level 38 was clearly demonstrated. So there was no basis whatsoever to do so. Had we been talking about a pound or an ounce or a couple of kilos, maybe there would have been an issue, but not double the drug quantity, over 150 more kilos to reach that threshold. You're saying that that was not going to make the difference between the low end of the guidelines range? Not in any way. Indeed, the thrust of the argument at sentencing had to deal with what my client's role was in the offense. And indeed, as it related to that, the district court made a specific determination that the role enhancement should not apply based upon the arguments that were made. Second, the government's argument that Rios is a case that speaks in terms of finality is exactly the opposite. In Rios, this court determined that on its own, sua sponte, it was going to conduct a fatico hearing, because it rejected the stipulation that was contained within the plea agreement, and then conducted that hearing to make a drug determination. And that's what the defendant appellant appealed from, that the court overturned, in essence, the stipulation, and he was sentenced to a higher term. So I would submit to the court that if anything, Rios presents a reason for due process to apply to make an appropriate determination by a preponderance of the evidence, which is what the law requires, and where there was not an incentive to do so preliminarily. That should be an opportunity afforded in these rare, unusual circumstances, which I submit this is one of them. Mr. Nelson, I'm trying to envision the hearing, and given the overwhelming evidence against your client at trial, what facts do you anticipate proving that would end up putting your client in a position for a reduced sentence? Two types of facts. One, the incentive for the cooperating witness to testify as they did, and two, what their relationship was with Mr. Delva during that prior period of time of which there's no corroboration. I would be focusing on those issues. But I'm confused now, because you would have had the incentive to explore both those points at trial. Prior counsel might have, if that would have been his strategy, that my client was not involved in offense. The incentive to implicate your client is the same. I mean, you're saying you now want to show that these people had an incentive to exaggerate and put him there. And you had that incentive at trial. Not exactly. Because for sentencing— That was done. That was— So what more, as Judge Azraq asked, what more do you have to ask these people that you didn't get to do at trial? Because when you focus on the problem of incentive, you'd be focusing on the problem, the problem of their actual knowledge of what took place during that period of time, as opposed to the usual argument that's made to discredit somebody in front of a jury as to their incentive to enhance and fabricate in order to get a better plea agreement. That's already done. That's already been taken care of. They're already sentenced. Now it's the basis of knowledge on their part. I'm not going to say that that's a difference, so I may not be understanding your argument if you want to try and expand on it. Okay. I mean, the notion that you don't have an incentive at trial to suggest that they don't know everything that went on at the time just strikes me as not very persuasive. As an experienced trial attorney, I shy away from specific facts when they might well hurt my client and enhance the credibility of the witness. That's the difference. What facts are we talking about you would have shied away from? Drug quantity? The drug quantities of the transactions that took place in 2002, as opposed to what happened in 2003. But here's where you have a problem. Just as you don't have an incentive, they didn't have an incentive back then to make it over 450 kilograms. They did. They did because they wanted to be able to sell themselves as witnesses to the government, to be able to show why they should be getting a lower sentence because he was the big kingpin in what was taking place. Not as between 150 and 450. No, but in terms of role in the offense, they were pointing the finger at him as being the mastermind behind it, which the court discredited. No. Thank you very much. Thank you. We're going to take the case under advisement.